Dickman, J.
The contract of lease provided that the number of tons of merchantable coal mined and removed from the land should be determined bjr reference to the bills of the diggers, and that the books of the lessees, showing the weight of the coal, should be open at all times, during business hours, to Burgner or his agents. A definite and primary mode of determining the quantity of coal mined was thus agreed upon by the parties to the contract. It was alleged, however, by the plaintiff, and denied by the defendants in the court below, that the original bills of the diggers had been destroyed by the lessees for the purpose of defrauding the lessor, and that-the books, accounts and memoranda of the lessees, relating to the mining operations, were and had been from the commencement of the lease, false, fraudulent and grossly inaccurate. Under this issue the court properly ruled *351 that the evidence of civil and mining engineers and coal miners as to the thickness of the vein of coal on the farm, the number of acres mined, and the number of tons which each acre should yield, might go to the jury, primarily, for the purpose of showing that the books of the lessees and the bills of the diggers were fraudulently kept or grossly inaccurate. If, upon comparing the quantity of coal mined, as ascertained by the estimates or surveys of engineers and miners, with the quantity mined as shown by the books and bills, so great a disparity appeared as to impeach the books and bills for fraud or gross inaccuracy, the jury, under the charge of the court, fairly interpreted, could then resort to such estimates or surveys as a standard for determining the actual quantity of coal mined. In thus ruling, and in so instructing the jury, we think there was no error, and that no ground was thereby furnished for reversing the judgment rendered on the first cause of action.
The question arises on the record, whether, upon a proper construction of the contract of lease, and in accordance with settled legal principles, the lessor was entitled to protection by the lessees against a subsidence of the surface of the land. It is contended by the latter that they had the right, by the terms of the lease, to remove all the coal in, under or upon the farm, without leaving ribs, pillars, posts, or supports to keep up the overlying soil, provided they exercised due care in the removal of such supports of the surface lands. The lessees, at the trial, offered evidence for the purpose of proving that it was the approved method of mining coal to mine and remove all the coal without leaving pillars, ribs or supports for the surface, and that they had removed the pillars and supports from under the lessor’s lands in a careful and prudent manner, and in the best and most approved method. This evidence was admitted, though objected to by the lessor on the ground that under a proper construction of the lease, and by well settled legal principles, he had the right of subjacent support, adequate to maintain the surface in its natural state, and could not be deprived of it, by reason of the ribs and pillars *352 having been taken away, in a careful and skillful manner. During.the trial the court reserved the point, but the jury having returned a verdict for the lessor for the amount of .damage found to have been done to the surface of the land, as they had also specially found that the ribs and pillars had been removed in a manner proper and reasonable, the court rendered judgment for the lessees, notwithstanding the verdict, on the third cause of action, holding that the lessees had the right to remove all the underlying coal without leaving any support to prevent a subsidence of the surface.
It seems to be well settled, that when one owning the whole fee, grants the minerals, reserving the surface to himself, his grantee will be entitled only to so much of the minerals, as he can get without injury to the superincumbent soil, unless, the language of the instrument clearly imports, that it was the intention of the grantor to part with the fight of subjacent support. Humphries v. Brogden, 1 E. L. & Eq., 241; Davis v. Treharne, 6 Law Rep., 460, (H. L. Appeal Cases, 1881) ; Coleman v. Chadwick, 80 Pa. St., 81; Jones v. Wagner, 66 id., 429; Harris v. Ryding, 5 Mee. & W., 60; Zinc Co. v. Franklinite Co., 13 N. J. Eq., 322, 342; Smart v. Morton, 5 Ell. & Bl., 30. The owner has a natural right to the use of his land, in the situation in which it was placed by nature, and if the surface of the land and the minerals beneath belong to different owners, the owner of the surface is entitled to have it supported by the underlying mineral strata, and, an action may be maintained against the owner of the minerals, for the damages sustained by the subsidence. Each owner must so use his own, as not to injure the property of the other. The subjacent support should be such as will preserve the integrity of the surface; but, if the mineral strata are. not essential, to prevent the subsidence of the upper soil — if the soil above, is such as not to require their support, the underlying minerals may be entirely removed by their owner, without liability to an action for so doing.
This obligation to protect the superincumbent soil, exists *353 whether there is a conveyance of the surface reserving the minerals, or a grant of the minerals, without a conveyance of the surface. In either case, the presumption arises, that the owner of the minerals is not, by removing them wholly or in part, to injure the owner of the soil above. According to the doctrines held by the courts, as summarized by an approved text writer, the right which the surface has to support, is a part of the freehold and not an easement. It is a right independent of the nature of the strata, and the mine owner can only work so far as is consistent with this right, and is liable if he violates it. The highest care and skill in the working of the mine, is no defense whatever, if injury results to the surface, from a removal of the subjacent strata. Woods’ Law of Nuisance, sec. 197, and cases cited.
If the grantee or lessee of a mineral estate, desires to be discharged from the servitude of leaving a sufficient support to the superincumbent estate, he should secure such relief by plain and explicit language in the contract, or, the contract should contain something from which the intention to discharge him from his obligation, will appear by necessary intendment. In Davis v. Treharne, supra, it was said by Lord Watson, “When a proprietor of the surface and the subjacent strata grants a lease of the whole or part of his minerals to a tenant, I think it is an implied term of that contract, that support shall be given in the course of working to the surface of the land. If it is not intended that that right should be reserved, the parties must make it very clear upon the face of the contract; in other words, they must express their intention so clearly, as to enable a court to say that such intention is plain.” And in the same case, Lord Blackburn said, “In common right the person who owns the surface has a right to have it properly supported. A court of law has to look at the documents to-see whether the parties have agreed upon something different from the common right. But, whether they have done so or not, is a question turning upon the construction of the documents.”
It becomes, therefore, a subject of inquiry, whether the language of the contract between Burgner and Humphrey *354 et al., when reasonably construed, clearly authorized the lessees to remove the pillars or supports, though necessary to prevent a subsidence of the surface, for, it is established beyond dispute, that the ribs and pillars were indispensable to the support of the soil above, as evidenced by the damage resulting from their removal. There is nothing in the lease to indicate that Burgner left it optional with his lessees, whether they would or not, after finishing their mining operations, leave the surface of his land in an unfit condition for agricultural purposes. In construing the instrument, reference should be had to the uses to which the property had been applied, and to its present and intended use. We do not reach the conclusion, that because Burgner, by the terms of the lease, saw fit to guard his dwelling house and barn from being injured by extending the mining operations too far, he thereby gave a license to the lessees to so conduct their mining operations, as to cause a large portion of his farm to cave in, swag, and become wholly useless for plowing or cultivation, and that too, without any recompense for the damage done, save the royalty on the coal mined and removed. That the intention to dispense with subjacent support, should be manifested by clear and unequivocal language in the deed or lease, is illustrated in. the case of Livingston v. Moingona Coal Co., 49 Iowa, .369. In that case there was a reservation in the deed of all coal and coal mines, with full right to mine the same b3r such means as might be deemed proper, “ without thereb3r incurring in any event whatever, any liability for injury caused or damage done to the surface of the land in working .coal mines, minerals,&c.” Under this reservation, the court held, that the defendants were bound to leave pillars or ribs of coal, if necessary to support the surface, and if they were negligent in their operations, or in not having left such ribs, whereby the land was injured, they were liable for the consequent damages.
It is urged that Burgner, by the lease, conveyed “ all the mineral coal,” and meant that it might all be taken away, without regard to the effect of its removal upon the over *355 lying soil. Baron Parke, in Harris v. Ryding, supra, in commenting upon the right of the surface owner, says: “ I do not mean to say that all the coal does not belong to the defendants, but that they cannot get it without leaving sufficient support.” Doubtless, Humphrey and Coleman had the right to mine and remove the coal, so far as they could, consistently with Burgner’s surface rights; but if, notwithstanding the need of support to the soil, they resolved to remove the natural props and pillars, it was incumbent on them to substitute artificial supports, if, by so doing, they could preserve the integrity of the surface.
In the case at bar we do not think that the rights of Humphrey and Coleman in reference to the ribs and pillars were enlarged by reason of their claiming under a lease instead of a grant. It is suggested that the lessor contemplated the mining and removal of the largest quantity of coal practicable, as thereby he would receive the largest benefit in the shape of royalty, and that, in that view, provision had been made in the lease for the payment of a minimum rent, requiring the lessees to mine each year a quantity of coal sufficient to yield in royalty at least the sum of one hundred dollars. While it is true that the lessor’s royalty would be in proportion to. the coal taken out, we find nothing in the lease from which it may be inferred that he intended to increase his royalty at the risk of irreparably damaging a large portion of his farm. And as to the clause reserving a minimum rent, there is no evidence of such advantages arising therefrom to the lessor as to establish a grant to the lessees by implication, of the right to mine and remove all the coal without leaving any surface supports, either natural or artificial. Besides, the minimum rent was liable to be discontinued at any time by the 'lessees by virtue of the clause in the lease, “ It is mutually agreed that said parties of the second part shall have the privilege of cancelling and surrendering this lease at any time upon payment of the amount due thereon at that time.”
Burgner, by the lease, gave the right, privilege and license to enter upon the lands, and search and explore for *356 mineral, coal, etc., “ and when found to exist on said lands, to dig, mine and remove the same therefrom, together with all and singular the rights, privileges, licenses and easements, necessary or incident, or in anywise appertaining to the proper prosecution of the business of mining and removing any or all minerals and substances aforesaid.” In our judgment, a clause of this kind cannot properly be construed into an enlargement of the power, so to deal with the mine as to let down the surface. In Davis v. Treharne, supra, words of similar import were construed as not enlarging the power to so mine as to cause a subsidence of the superincumbent lands.
The contract of lease under consideration contains the clause, “ It is also agreed that no mining operations by the parties of the second part, their heirs or assigns, shall extend to, or be so near, the dwelling house or barn now upon said land as to injure said buildings.” In our view, this provision exempted the coal under the buildings from the mining operations authorized by the lease. While it was not permitted to destroy or sink the surface of any portion of the farm by failing to leave the necessary supports, from an abundance of caution, the land underlying the lessor’s dwelling house and barn was to remain entirely intact. It seems clear that the lessor was especially desirous that his dwelling house and barn should not be subjected to any of the possible risks of excavation, and he therefore sought to protect them against all contingencies by inserting the above clause in the lease. And the court properly charged the jury that having no right to mine there, it was of no consequence to ascertain whether the lessees did it carelessly and negligently, or otherwise; “that they had no right to mine under those two buildings.” The lessees wrongfully extended their excavations to and under the buildings, and wrongfully invaded the body of coal underlying the same. Exempt as such coal was from any mining operations under the lease, the lessees could not legally claim that the lessor should be limited to the price fixed by the contract for coal mined elsewhere on the premises. In *357 determining the quantity of coal mined' and removed from under the buildings, the lessor not being bound by the diggers’ bills or books of the lessees, he should have been permitted to introduce other evidence, under his fourth cause of action, to prove the quantity of coal so mined and removed, and the ne.t value thereof at the mine at the time of its removal, irrespective of the price put upon other coal, by the terms of the contract. While the lessor is entitled to be indemnified for the damage caused to his buildings by removing the subjacent coal, such indemnification is not to be confounded with compensation for the coal itself.
. We are of opinion, therefore, that the judgment of the court of common pleas on the first and second causes of action should be affirmed; that the judgment on the third cause of action should be reversed, with an entry of judgment for the plaintiff in error; and that the judgment on the fourth cause of action should be reversed, and the cause remanded for a new trial. .

Judgment aeeordingly.